398 A.2d 1007

**COMMONWEALTH of Pennsylvania**

v.

**Robert L. PERRIN, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 18, 1979.

Decided March 16, 1979.

Joel Harvey Slomsky, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Stephen S. Seeling, Philadelphia, for appellee.

Before EAGEN, C. J., and ROBERTS, NIX, MANDERINO and LARSEN, JJ.

OPINION

LARSEN, Justice.

On July 3, 1975, Ida Smith was found strangled to death in the bedroom of her Philadelphia home. Eleven days later, the appellant, Robert L. Perrin, was apprehended and charged with the murder of the deceased. Appellant elected to be tried by a jury and, on January 21, 1976, he was found guilty of murder in the second degree (felony murder). Motions in arrest of judgment and for a new trial were filed and denied. On August 31, 1976, appellant was sentenced to life imprisonment, and this direct appeal followed.

Appellant's initial contention is that the evidence is not sufficient to sustain his conviction of murder in the second degree because it was not proven beyond a reasonable doubt that he was guilty of involuntary deviate sexual intercourse, the felony underlying this felony-murder conviction. The evidence adduced at appellant's trial and all proper inferences therefrom, when viewed in the light most favorable to the Commonwealth,[1] produce the following grim scenario:

Appellant resided at 1739 N. Bailey Street in the City of Philadelphia with his girlfriend Sheila Richardson, Ms. Richardson's five-year-old daughter Ava, and the deceased, Ida Smith. On July 2, 1975, at approximately 10 p. m., Ida Smith and the Richardson child returned home from a four-hour visit with the child's grandmother. They found appellant and his girlfriend engaged in a heated argument over the disappearance of some money the deceased had given to Sheila Richardson for the household expenses. Appellant's girlfriend concluded the argument by ordering appellant to pack his belongings and leave the house by the coming weekend, and all four retired for the evening. At approximately 11:30 p. m., after the deceased was alone in her bedroom, she telephoned her fiance and requested that he come and take her away from the house stating that appellant was behaving very strangely and expressing a fear

1. *Commonwealth v. Rose*, 463 Pa. 264, 267–68, 344 A.2d 824, 825 (1975).

of him. The deceased's fiance declined because of the late hour and offered to discuss the matter with her on the following day. Their phone conversation lasted until approximately 2:15 a. m. on July 3, 1975.

Five hours later, appellant's girlfriend went into the deceased's bedroom to awaken her and found that she would not respond. Appellant told her that the deceased was dead. Appellant's girlfriend went back to her own bedroom and was telephoning the deceased's aunt when appellant entered the room and forcibly interrupted her dialing. Appellant then attempted to prevent her from reporting the death to anyone by brandishing an ice pick in her face and stretching the telephone cord between his hands in a threatening manner while stating that this is what had happened to the deceased. A violent struggle ensued which attracted the attention of neighbors who broke into the house and freed appellant's girlfriend from his grasp. Appellant then fled from the house and his girlfriend telephoned the police.

The responding officers examined the victim's body, which was lying naked under the covers with her legs spread apart, and could find no signs of life. The victim's bedroom was searched and pieces of torn cloth which were later identified as her nightgown were uncovered. An autopsy was performed on the victim's body and this disclosed that spermatozoa had been deposited in her vagina within twenty-four hours of death, that the wall of her rectum just distal to the anus had been torn within six hours of death in a manner consistent with forceful penetration, and that the cause of death was strangulation by ligature (i. e., strangulation accomplished by a binding or tying with a cord, filament, or similar object). It was the medical examiner's opinion that the victim had been sexually assaulted.

The crime of involuntary deviate sexual intercourse is committed when a person forces another person by actual physical compulsion or threats thereof to engage in acts of anal or oral intercourse. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 3101 and § 3123. From the fact that the victim was found strangled to death

on her bed with her legs spread apart, her clothing torn from her body, spermatozoa in her vagina and tears on the wall of her rectum, the jury could have found beyond a reasonable doubt that she had been sexually assaulted and forcibly sodomized. Further, from the victim's fear of appellant, appellant's access and opportunity to commit the crime, and appellant's aforementioned inculpatory statements to his girlfriend and bizarre behavior after the victim's corpse was discovered, the jury could have concluded beyond a reasonable doubt that appellant perpetrated this crime. Thus, there was sufficient evidence to convict appellant of involuntary deviate sexual intercourse and, consequently, to sustain his conviction of murder in the second degree (felony murder).

■ Next, appellant alleges that the Court below abused its discretion in not appointing new counsel after appellant expressed reservations about the adequacy of counsel's pretrial preparation. Before voir dire began, appellant's appointed counsel approached the Court and stated that appellant was dissatisfied with his representation. The Court questioned appellant and discovered that the source of his dissatisfaction was a lack of communication which had resulted from counsel's inability to visit the prison and communicate the investigator's findings to appellant. The Court informed appellant and his counsel that the voir dire would commence as scheduled and ordered them to confer with each other after court was adjourned for the day. The Court then instructed appellant to return on the following morning and report any complaints which were not resolved by this conference. Appellant did not call any unresolved complaints to the Court's attention on the following day nor did he express dissatisfaction with counsel at any other point in the proceedings. We find appellant's claim has no merit.

■ Third, appellant alleges that the Court below abused its discretion in ruling that the Commonwealth could impeach his credibility with a prior larceny conviction. Specifically, appellant contends that in so ruling the Court failed to give proper weight to the prejudice that would

result from admission of appellant's prior conviction and the chilling effect this prejudice would have on his decision to testify.[2]

The per se rule admitting prior convictions involving dishonesty or false statements for purposes of impeaching a criminal defendant was abandoned in *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). In its stead, *Bighum* adopted the approach of *Luck v. United States*, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965) and placed the matter within the sound discretion of the trial court after a balancing of those factors which bear upon the competing interests involved. Recently, in *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978), this Court further refined the factors which should be weighed by the court in exercising its discretion[3] and stressed the necessity for a meaningful exercise of that discretion.

In the instant case, the Court below conducted a hearing to determine the admissibility of appellant's prior convictions. The Commonwealth informed the Court that appellant had four prior convictions, including two within the preceding three years for larceny, and argued that the larceny convictions should be admitted for impeachment purposes because their direct bearing on appellant's credibility outweighed appellant's mere allegations of prejudice. Appellant's counsel responded, asserting that introduction of the two convictions would prejudice appellant to such an

**2.** Appellant also contends that the Court below abused its discretion by failing to consider the extenuating circumstances surrounding appellant's prior convictions. Appellant did not raise this latter contention in the Court below nor did he call any extenuating circumstances surrounding his prior convictions to that Court's attention. This allegation of error has, therefore, been waived. *Commonwealth v. Green*, 477 Pa. 170, 383 A.2d 877 (1978).

**3.** Briefly, the factors set forth in *Roots* are: 1) the degree to which the prior offense reflects upon the defendant's veracity; 2) the degree to which the prior offense tends to smear the defendant or suggests a propensity to commit the crime charged; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the ability of the defense to present its version of the events through other witnesses; and 5) the availability of alternative means of impeachment.

extent that it would preclude him from testifying and establishing facts that could be elicited only through his testimony. Appellant's counsel further argued that the introduction of prior larceny convictions would be particularly prejudicial in this case because of the testimony by Commonwealth witnesses that appellant argued with his girlfriend over the disappearance of some money shortly before the murder. After considering these arguments along with the fact that appellant's prior larceny convictions were felonies and generally unrelated to the crime of murder, the Court found that the prejudicial effects of appellant's prior record did not completely outweigh its probative value and ruled that one of the two larceny convictions could be used by the Commonwealth for impeachment.

It is apparent from this compromise ruling that the Court below weighed the prejudice inuring to appellant from the introduction of his prior convictions and balanced that prejudice against those factors calling for admission of appellant's prior record. The procedures followed by the Court thus conform precisely to the approach we prescribed in *Commonwealth v. Bighum, supra,* and *Commonwealth v. Roots, supra.* It is also clear that there are legitimate considerations favoring admission of appellant's prior larceny convictions and that the Court's compromise in permitting the Commonwealth to introduce only one of those convictions is neither manifestly unreasonable nor arbitrary. Appellant's claim of abuse of discretion is, therefore, without merit and we hold that the Court below did not err in ruling that one of appellant's prior larceny convictions could be used by the Commonwealth for impeachment.

Appellant's final contention is that he was denied effective assistance of counsel because trial counsel failed to a) examine the jury minutes and records of the Philadelphia District Attorney's Office for the evidence required by *Commonwealth v. Martin,* 461 Pa. 289, 336 A.2d 290 (1975) to shift the burden of proof on appellant's allegation that the prosecution used its peremptory challenges to systematically exclude blacks from the jury; b) object to the relevancy of

testimony concerning the victim's state of mind shortly before her death; c) inquire into the basis for the medical examiner's conclusion that the wall of the victim's rectum was torn within six hours of death; and d) inquire into the age of a semen stain found by the police laboratory chemist on the victim's bedsheets.

■ The test of constitutionally effective assistance of counsel is whether a "particular course chosen by counsel had some reasonable basis designed to effectuate his client's interest." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). The initial factor to be considered in applying this standard is whether the matters counsel is charged with incompetently failing to pursue had a reasonable basis. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977).

■ Appellant's first two claims do not survive this initial inquiry. While it is true that the Commonwealth exercised most of its peremptory challenges in striking blacks from the jury panel, two blacks served on appellant's jury and five more would have if appellant himself had not struck them with peremptory challenges. Thus, but for appellant's actions, there would have been seven blacks on the jury. Appellant's claim that the Commonwealth was responsible for systematically excluding blacks from the jury is, therefore, wholly without merit, and that result is not altered by whether or not counsel shifts the burden of proof. Similarly, an objection to the relevancy of statements made by the victim shortly before her death to the effect that she feared appellant and did not want to remain in the same house with him would have been fruitless. This evidence is clearly relevant to the question of whether appellant forced the victim into having sexual relations with him. As appellant's counsel cannot be deemed ineffective in failing to advance these frivolous claims and objections, appellant's first two contentions of ineffective assistance must fail.

Appellant's latter contentions that counsel was ineffective in failing to inquire further into the expert testimony of two

Commonwealth witnesses are, however, of arguable merit. It is thus necessary to look to whether counsel's actions had some reasonable basis designed to effectuate appellant's interest. *Commonwealth ex rel. Washington v. Maroney, supra.* The record in this case shows that they did have such a basis.

Both the police laboratory chemist and the medical examiner were eminently qualified to testify as expert witnesses. In fact, appellant's counsel was familiar with the medical examiner and attempted with no avail to stipulate to his qualifications. Each witness had first-hand knowledge of the facts underlying his opinion and their testimony was the most damaging evidence offered by the Commonwealth on the question of whether the victim had been sexually assaulted and forcibly sodomized. While further inquiry by appellant's counsel into their findings and the bases of their opinions may have elicited responses that would damage the Commonwealth's case, it was equally if not more likely to assist the Commonwealth by causing repetition and reinforcement of crucial evidence. Counsel was not, therefore, ineffective in failing to pursue these matters.

Judgment of sentence affirmed.

O'BRIEN, J., did not participate in the consideration or decision of this case.

ROBERTS and MANDERINO, JJ., filed dissenting opinions.

ROBERTS, Justice, dissenting.

"A determination under [*Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973)] that an offense does not 'involve dishonesty or false statement' requires its absolute exclusion as a basis for impeachment." *Commonwealth v. Roots,* 482 Pa. 33, 38–39 n. 3, 393 A.2d 364, 366 n. 3 (1978). Even though nothing on this record indicates that appellant's previous larceny conviction involved dishonesty or false statement, the majority finds nothing improper in the introduction of this prior conviction. I dissent.

198

MANDERINO, Justice, dissenting:

The majority finds no error in permitting the prosecution to admit appellant's prior larceny convictions and states that there are clearly "legitimate considerations favoring admission." (at p. 1011) I disagree.

The introduction of the highly prejudicial evidence of prior convictions merely to impeach an accused's testimony is error. Even though careful instructions are given by a trial judge that such evidence may only be considered for impeachment purposes, even the most conscientious fact finder will be prejudiced, albeit unconsciously, by the knowledge of this prior conviction. The admission of such evidence permits, perhaps encourages, the factfinder to find an accused guilty based upon a "bad person theory"—that is, appellant committed crime A, therefore it is more likely he committed crime B.

It is fundamental to our system of criminal justice that the prosecution must prove guilt beyond a reasonable doubt. It is utter folly to permit admission of evidence of prior convictions for impeachment purposes because the weakness of the prosecution's case requires such impeachment. The prosecution should be required to prove guilt without the introduction of this highly prejudicial information, and I therefore dissent.