413 A.2d 684

**COMMONWEALTH of Pennsylvania**

v.

**George ARMS, Appellant.**

Supreme Court of Pennsylvania.

Argued May 24, 1979.

Decided April 30, 1980.

Jay N. Abramowitch, E. Jay Tract, Reading, for appellant.

Charles M. Guthrie, Jr., Asst. Dist. Atty., J. M. Morrissey, Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant, George Arms, was convicted by a jury of murder of the third degree and sentenced for his alleged involvement in the shooting death of Steven Warunek, a

sixteen year-old Reading youth. On this appeal, appellant seeks a new trial on the ground that the Commonwealth introduced testimony coerced from Commonwealth witnesses by a previous District Attorney of Berks County. We affirm.

Like *Commonwealth v. Cohen,* 489 Pa. 167, 413 A.2d 1066 (1980), this case arises from the criminal episode in which Cohen allegedly hired appellant and Anthony Reynolds to kill Warunek. According to the Commonwealth, Arms fatally shot the victim with a rifle in Reading's Egelman Park.

Unlike Cohen, however, appellant was tried in Schuylkill County, rather than in Berks, because in appellant's case the trial court ruled that "massive publicity" prevented appellant from obtaining a fair and impartial trial in Berks County.[1] Also unlike *Cohen,* trial took place in September, 1976, one year after the Cohen trial, due to a postponement while appellant was incompetent to stand trial.[2] As a result, the Commonwealth's case at appellant's trial was presented by the staff of District Attorney J. Michael Morrissey, not by the staff of his predecessor District Attorney Robert VanHoove, which presented the Commonwealth's case at the Cohen trial.[3]

At appellant's trial, the Commonwealth presented expert testimony designed to establish the time and cause of death and lay testimony of Kerry Young, girlfriend of the victim and former girlfriend of Cohen, who testified to statements Cohen made to her concerning the victim. Also presented

1. In *Cohen,* we hold that, in view of the widespread dissemination of prejudicial material at the time of trial, the trial court abused its discretion in denying Cohen a change of venue.

2. In April of 1975, the trial court ruled appellant incompetent to stand trial. After additional psychiatric evaluation, appellant was found competent in December of 1975. No question of appellant's competency to stand trial is presented on this appeal.

3. Previous District Attorney VanHoove was replaced by District Attorney Morrissey in January, 1976. We note that, unlike in *Cohen,* District Attorney Morrissey does not agree with the appellant that relief must be granted. Also unlike in *Cohen,* the Attorney General has taken no position in this case.

by the Commonwealth were Jack Geisler, Anthony Reynolds, and Richard Wamsher. Geisler, also charged in the killing, had pleaded guilty and had been convicted and sentenced as of appellant's trial. He testified that he was present when Arms accepted Cohen's offer of $700 cash and also present when Arms shot the victim. Reynolds was similarly charged, convicted and sentenced. He testified that appellant accepted Cohen's offer. He further heard shots at the scene of the killing and, after hearing the shots, saw the victim crawling on the ground. Wamsher, not charged, who acted as a depository for the $700 cash until the killing occurred, confirmed appellant's acceptance of Cohen's offer.

It is the testimony of Geisler, Reynolds, and Wamsher which appellant now claims was coerced. In making this claim, appellant relies heavily upon the testimony of Reading Police Officer John Halstead. Halstead testified that, in pre-trial investigation and interrogation of these prosecution witnesses, previous District Attorney VanHoove regularly alluded to and reminded the witnesses of the electric chair and the smell of burning flesh. According to this police testimony, Geisler cried as a result of the District Attorney's frequent references to the electric chair and burning flesh. Appellant further points to the previous District Attorney's successful efforts to obtain for Geisler a pre-trial release on his own recognizance. Also cited is the failure of the Commonwealth to charge Geisler with perjury even though Geisler admitted that he lied in preliminary hearings in the case. Appellant now claims in light of this police testimony and the other allegations that "the admitted coercion of the witnesses so tainted their testimony as to deprive him of a fair trial."

Appellant's present contention, however, does not attack any ruling of the trial court on the admissibility of the challenged Commonwealth witnesses' testimony. At no time during trial did appellant interpose his present objection. Nor does appellant cite any ruling of the trial court restricting the defense's cross-examination of the challenged witnesses. And it is not claimed that the trial court in any

way limited presentation of testimony concerning the alleged coercion. Indeed, the record reveals that the trial court afforded appellant full opportunity to subject the Commonwealth witnesses to thorough cross-examination on the alleged coercion and to introduce his own testimony concerning the alleged threats. So too, appellant takes no objection to the charge of the trial court on this matter. Here, the court instructed the jury that, because the testimony of accomplices comes from a "polluted source," it is the jury's duty to view that testimony with caution. See *Commonwealth v. Russell,* 477 Pa. 147, 383 A.2d 866 (1978).

Appellant's claim, in reality, questions only the jury's apparent refusal to disbelieve all of the testimony he now disputes. But it is not this Court's function to disturb the jury's factual determination. "It is a basic tenet of our system of jurisprudence that issues of credibility are properly left to the trier of fact for resolution." *Commonwealth v. Whack,* 482 Pa. 137, 140, 393 A.2d 417, 419 (1978). In exercising this prerogative, "[t]he fact-finder is free to believe all, part, or none of the evidence." *Commonwealth v. Rose,* 463 Pa. 264, 268, 344 A.2d 824, 826 (1975). Thus we are satisfied that no basis exists for disturbing the jury's verdict. Appellant's claim must be rejected.[4]

Judgment of sentence affirmed.

4. We have reviewed appellant's contention that the evidence is insufficient to support the jury's verdict. Our review satisfies us that the record amply supports the jury's finding of guilt. We have also reviewed the other following contentions: (1) that the trial court erred in permitting the Commonwealth on rebuttal to introduce testimony that a non-testifying expert pathologist confirmed the Commonwealth's testifying expert pathologist's theory on the time of death; (2) that the trial court improperly permitted the Commonwealth to call appellant's ballistics expert to confirm that the non-testifying pathologist is an expert; (3) that the trial court denied appellant equal protection and due process in its order permitting appellant's appointed counsel to avail themselves of the services of a pathologist; (4) that the trial court erred in refusing to permit appellant to show there were outstanding warrants for Warunek's arrest; (5) that the trial court erred in permitting Commonwealth testimony that a lead fragment was found on the floor of the morgue where the autopsy on the victim's body was performed; (6) that the trial court permitted hearsay testimony of Kerry Young; (7) that the

trial court erred in permitting the Commonwealth to rehabilitate Jack Geisler by way of prior consistent statements; and (8) that the trial court improperly refused to permit appellant to introduce police records indicating that three defense witnesses told police the victim was alive after the alleged date of death. We conclude that all of these claims of error are unsupported by the record and thus lack merit.