612 A.2d 1014

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Gary DENNIS.**

Superior Court of Pennsylvania.

Argued May 21, 1992.

Filed July 20, 1992.

Reargument Denied Sept. 9, 1992.

426

Karen L. Grigsby, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Owen Larrabee, Asst. Public Defender, Philadelphia, for appellee.

Before BECK, JOHNSON and HUDOCK, JJ.

BECK, Judge.

This is an appeal by the Commonwealth from an order of the trial court suppressing 100 vials of cocaine and $497 in cash which were seized by the police following defendant's arrest. The trial court found that the police officers seizing these items lacked probable cause to believe that defendant-appellee had committed a crime, and that therefore their pursuit of defendant into a nearby dwelling and subsequent seizure of the items was unlawful. Appellant argues that the trial court erred in finding no probable cause and no justification to enter the building. We agree with Commonwealth-appellant that, based on the facts of this case, the trial court's findings were legally erroneous. We therefore reverse the order to suppress and remand for further proceedings.[1]

Our standard of review of the grant of a suppression motion is well established:

In reviewing the findings of a suppression court where the Commonwealth is appealing, we must consider only

[1]. This appeal is properly before this Court pursuant to the Commonwealth's certification that the trial court's granting of the motion to suppress has substantially handicapped its prosecution of the defendant. *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382, 385, n. 5 (1985). Certainly, prohibiting introduction of the cocaine and money seized from defendant would seriously hamper the Commonwealth's prosecution of defendant for possession of cocaine and possession of cocaine with intent to deliver. *See Commonwealth v. Kendrick,* 340 Pa.Super. 563, 490 A.2d 923 (1985).

the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983) (plurality opinion). While we are bound by the lower court's findings of fact if supported by the record, we are not bound by the lower court's legal conclusions which are drawn from the facts of the case. *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111 (1985), *cert. den.*, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985).

*Commonwealth v. Chase*, 394 Pa.Super. 168, 575 A.2d 574 (1990), *alloc. den.* 527 Pa. 608, 590 A.2d 295 (1990), *quoting Commonwealth v. Lagana*, 517 Pa. 371, 375–76, 537 A.2d 1351, 1353–54 (1988).

The uncontroverted testimony presented at the suppression hearing establishes the following facts. On March 9, 1989, uniformed police officers Edward Bier and John Marynowitz were in a marked police car, patrolling the 1600 block of Sparks Street, in response to neighbors' complaints that drugs were being sold at 1618 Sparks. (N.T. 4/16/91, p. 21). At 3:25 p.m., Officer Bier saw the defendant, Gary Dennis, and another man in front of the doorway of 1618 Sparks Street (N.T., p. 5, p. 15). Officer Bier saw the other man hand defendant an amount of U.S. currency, which defendant placed in his right pocket; defendant then reached into his left pocket and took out an object which Bier could not see. (N.T., p. 6).

Officer Bier got out of his patrol car and approached the two men, who turned and ran into the house. (N.T., p. 8). Bier and Marynowitz chased the men inside; Bier followed defendant to a second-floor bedroom, where he saw defendant open a window and throw out a clear plastic bag containing a white, chunky substance. (N.T., p. 9). Bier grabbed the defendant and looked out the window to determine where the bag had fallen. (N.T., p. 9). At that point, Officer Marynowitz entered the room and frisked defendant, finding the money in defendant's pocket, and defendant was placed under arrest. (N.T., p. 12–13). Bier then

went downstairs and outside the house, where he recovered the plastic bag thrown out the window by defendant. (N.T., p. 12). The bag was found to contain crack cocaine. (R.R., p. 51a).

 The court below found that because there was no probable cause to believe defendant had committed a crime at the time Officers Bier and Marynowitz chased him into the building, their entry into the building and seizure of the suppressed items was unlawful. We disagree. Warrantless entry into a dwelling, and a subsequent seizure of items found therein, is permissible where the police are in "hot pursuit" of a fleeing felon. *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Of course, the police must have probable cause to believe that the individual they are pursuing has committed a crime. *Commonwealth v. Montgomery,* 246 Pa.Super. 371, 371 A.2d 885 (1977). We find that the police had probable cause.

 Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that defendant has committed it. *Commonwealth v. Elliott,* 376 Pa.Super. 536, 546 A.2d 654 (1988), *alloc. den.,* 521 Pa. 617, 557 A.2d 721 (1989). In determining whether probable cause existed in a particular situation, a court will look not just at one or two individual factors, but will consider the "totality of the circumstances" as they appeared to the arresting officer:

When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element ... We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might ... Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations

of everyday life on which reasonable and prudent men
act.

*Commonwealth v. Simmons,* 295 Pa.Super. 72, 440 A.2d
1228, 1234 (1982), *quoting Commonwealth v. Kazior,* 269
Pa.Super. 518, 410 A.2d 822, 824 (1979). As courts of this
Commonwealth have repeatedly emphasized, determinations
of probable cause "must be based on common-sense non-
technical analysis." *Commonwealth v. Gray,* 509 Pa. 476,
482, 503 A.2d 921, 925 (1985).

Taking a common-sense view of the facts before us, we
find that when Officer Bier, knowing of neighbors' com-
plaints that drug deals were occurring at 1618 Sparks,
observed defendant at that address accept money in ex-
change for the transfer of a small item, and then bolt when
he saw the police approaching, he had probable cause to
believe that criminal activity had occurred. This case is
similar to others in which tips to police were corroborated
by such other facts as to create a reasonable belief of
criminal activity. *See, e.g., Commonwealth v. Price,* 318
Pa.Super. 240, 464 A.2d 1320 (1983) (anonymous tip regard-
ing drug dealing corroborated by police observation of the
specified location established probable cause); *Common-
wealth v. Hart,* 266 Pa.Super. 190, 403 A.2d 608 (1979)
(police had probable cause to arrest driver of a vehicle
fitting description of a stolen truck when driver could not
produce license or owner's card); *Commonwealth v. Jones,*
506 Pa. 262, 484 A.2d 1383 (1984) (informant's tip regarding
drug dealing corroborated by police observation of defen-
dant).

We find particularly compelling in this case the fact that
residents of the area, individuals living on the 1600 block,
made multiple reports to police of drug dealing at 1618
Sparks. Members of a particular neighborhood are unique-
ly well-qualified to observe what is going on in their com-
munity, and should be supported in reporting drug activity
to the police. As our Supreme Court noted in *Common-
wealth v. Sudler,* 496 Pa. 295, 436 A.2d 1376 (1981), regard-
ing another citizen's reports to police:

Unlike in the typical informant case, where there exists the potential that the informant is acting out of self-interest, here there is no basis to conclude that Quinones was motivated by anything other than good citizenship in making his disclosure.... when an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case.

496 Pa. at 305, 436 A.2d at 1381. *Accord, Commonwealth v. Singleton,* Pa.Super.Ct. 1992, 603 A.2d 1072, 1074, *quoting Commonwealth v. Gray, supra,* 509 Pa. at 483–84, 503 A.2d at 925 ("such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise 'perfect crimes' ").

■ The trial court's differing conclusion in this case appears to stem from two basic errors of approach. First, the court failed to consider the "totality" of the circumstances known to the arresting officer; rather, the court listed each individual factor (the complaints, the exchange, the defendant's flight) and cited cases finding that factor, in isolation, not to constitute probable cause. This is incorrect. "Facts insufficient to justify an arrest if considered separately may in combination supply probable cause." *Commonwealth v. Simmons,* 295 Pa.Super. 72, 440 A.2d 1228, 1235, *quoting Commonwealth v. Roscioli,* 240 Pa.Super. 135, 138, 361 A.2d 834, 836 (1976).

■ Second, the court erred in appearing to use a higher standard for establishing probable cause than is appropriate. The court below discounted defendant's exchange of money for some object and his flight into the house at 1618 Sparks Street as factors in establishing probable cause because of his belief that such behavior could have an innocent, rather than criminal, explanation. This is again incorrect. Probable cause exists when criminality is one reasonable inference; it need not be the only, or even the most likely, inference. *See, e.g., Commonwealth v. Kendrick,* 340 Pa.Super. 563, 571, 490 A.2d 923 (1985) (probable

cause "does not demand any showing that ... a belief [of criminal activity] be correct or more likely true than false"); *Commonwealth v. Moss,* 518 Pa. 337, 344, 543 A.2d 514 (1988) (in assessing sufficiency of probable cause, the fact that other inferences could be drawn from circumstances does not demonstrate that inference that was drawn by police was unreasonable).

In sum, we find that the police officers here had probable cause to believe defendant had committed a crime at the point where he fled back into the house. Therefore, their entry into the house, and subsequent arrest and seizure of the suppressed items, were lawful.

Order granting motion to suppress is reversed. Jurisdiction relinquished.

JOHNSON, J., files a Dissenting Opinion.

JOHNSON, Judge, dissenting:

The trial court found that the facts and circumstances within the officers' knowledge, and those of which they had reasonably trustworthy knowledge, were not sufficient to warrant a prudent person in believing that Gary Dennis had committed or was committing an offense. I find no error of law or abuse of discretion by the trial court. As did the Honorable Mark I. Bernstein, I would conclude that probable cause to search or arrest was lacking at the time the officers pursued Dennis into his dwelling. The objects recovered as the result of the pursuit and seizure of Dennis were properly suppressed. I must therefore dissent.

Our Supreme Court has recently restated the rule to be followed when reviewing the grant of a suppression motion, as follows:

[W]here a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. Pa.R.Crim.P. 323(h). In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so,

we are bound by those findings. Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted.

*Commonwealth v. DeWitt,* 530 Pa. 299, ——, 608 A.2d 1030, 1031 (1992), (citations omitted).

We are limited to the evidence on the record of the suppression hearing and the findings of the trial court. In reviewing the suppression court's determination, we must view the facts in the light most favorable to the prevailing party. *Compare Commonwealth v. Edwards,* 528 Pa. 103, 105, 595 A.2d 52, 53 (1991); *Commonwealth v. Robinson,* 518 Pa. 156, 159, 541 A.2d 1387, 1388–89 (1988).

Moreover, the facts and circumstances establishing probable cause must be known to the police at the time of the arrest. *Henry v. United States,* 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, 139 (1959); *Commonwealth v. Rush,* 459 Pa. 23, 26, 326 A.2d 340, 341 (1974). In this case, the Commonwealth contends, as it must, that the facts known to the officers at the time they pursued Dennis into the house were sufficient to permit a conclusion that a felony had already been committed, thereby establishing the exigent circumstances necessary to support their pursuit and entry. I must disagree.

When the suppression hearing testimony is reviewed in a light most favorable to Dennis, the prevailing party, it reveals the following facts. On March 9, 1989, uniformed police officers Edward Bier and Officer Marynowitz began an area patrol in the vicinity of the 1600 block of Sparks Street, at approximately 2:10 P.M. They were in a marked police car, patrolling the area, traveling up and down the streets, at times, stopping the vehicle.

Prior to leaving their District police station and arriving in their patrol area, the officers had received District complaints from their Captain that drugs were being sold from 1618 Sparks Street. The Captain had received these com-

plaints "from the community." Officer Bier, who was the only witness to testify at the suppression hearing, admitted that there were no radio calls or anything regarding drug sales on Sparks Street other than the Captain's statement made to the officers at the station. There is nothing in the suppression hearing transcript to suggest that the description of persons, the time of drug activity, or other specifics were provided to the officers, by their Captain, by another police official, or by any other source.

At approximately 3:20 P.M., more than one hour after the area patrol had commenced, Officer Bier observed an unidentified white male talking to an unidentified black male, while both were standing outside the doorway of 1618 Sparks Street. Bier observed the unidentified white male hand the black male, who was later arrested and identified as Gary Dennis, money which Dennis then placed in his right pocket. Dennis was then observed taking something out of his left pocket, an object which Bier could not see. There is no direct testimony in the suppression hearing transcript as to what Dennis did with the unidentified object. Officer Bier testified as follows:

> The defendant then went into his left pocket and took out an object, an object which I could not see but believed, based on what had transpired, to be a narcotics sale.

Motion to Suppress Transcript, April 16, 1991, page 6.

At this point, Officer Bier alighted from his patrol car and approached the two men. As Bier approached, both men on the porch looked in Bier's direction and ran into the dwelling. Both Bier and Marynowitz chased the men into the house.

I agree with my colleagues that the pursuing police officers must have probable cause to believe that the individual they are pursuing has committed a crime, in order to support the entry into the dwelling. I also agree that in determining whether probable cause existed, our task is not to look at one or two factors individually but to consider the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Commonwealth*

v. *Rodriguez*, 526 Pa. 268, 272, 585 A.2d 988, 990 (1991); *Commonwealth v. Ellis*, 354 Pa.Super. 11, 17, 510 A.2d 1253, 1256 (1986).

The standard which our court en banc repeated in *Commonwealth v. Ellis, supra*, as quoted from *Commonwealth v. Simmons*, 295 Pa.Super. 72, 83, 440 A.2d 1228, 1234 (1982), *further quoting Commonwealth v. Devlin*, 221 Pa.Super. 175, 178, 289 A.2d 237, 239 (1972), is fully applicable on this appeal:

> [w]hen we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element.... We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might.... Finally, we must remember that in dealing with questions of probable cause, we are *not* dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same 'beyond-a-reasonable-doubt' standard which we apply in determining guilt or innocence at trial.

*Commonwealth v. Ellis, supra*, 354 Pa.Superior Ct. at 17–18, 510 A.2d at 1256 (emphasis in original).

In the case now before us on appeal, the trial court aptly noted that there are really only three factors that could possibly coalesce in order to constitute probable cause: (1) the statement made by the Captain to the officers that drug sales were taking place at 1618 Sparks Street, without attribution of that information to any specific person or persons in the community; (2) two unidentified persons,—one white, one black—standing on a doorstep, while one man hands some money to the other man and the latter takes something out of his pocket; and (3) both men hurrying into the house after looking in Officer Bier's direction.

My colleagues in their majority opinion adopt the Commonwealth's characterization of the "District complaints" as "neighbors' complaints". This might make the subse-

quent pursuit, arrest and seizure more appealing, however, there is no direct testimony by Officer Bier that these were in fact "neighbors' complaints." Bier testified only as to "District complaints." Motion to Suppress Transcript, *supra*, page 4. On cross-examination, the following exchange between defense counsel and Officer Bier occurred:

Q. The police report I referred to earlier says that you were patrolling from 2:10 p.m. to 3:30 p.m.; that you made a constant patrol in the 1600 block of Sparks Street due to Captain and neighbors' complaints of drugs being sold in the area. Is that accurate?

A. Being sold from 1618 Sparks Street.

Q. From specifically 1618?

A. That's correct.

Q. There was no radio call, or anything like that that would substantiate that claim, is there?

A. That's correct. We received the District complaints from the Captain. The Captain receives it from the community, and we act on that.

THE COURT: Okay.

BY THE COURT:

Q. But, in fact, you received information only from the Captain?

A. That's right, Your Honor.

Q. He told you whatever he told you?

A. Yes.

Q. He got his information from wherever he got it?

A. Correct.

THE COURT: Next question.

Motion to Suppress Transcript, *supra*, pages 21–22. Defense counsel referred to a statement in a police report that characterized the reports as "Captain and neighbors' complaints" but that police report was not introduced into evidence and Officer Bier did not expressly adopt that characterization in his testimony.

I also am unable to accept the majority's assertion that "Officer Bier ... observed defendant ... accept money in

exchange for the transfer of a small item, and then bolt when he saw the police approaching." Majority at 434. The only possible testimony that could support a conclusion that an exchange had taken place was not what Bier *observed,* but rather what he *supposed.* Bier testified:

A. I observed a white male talking to this defendant here; at which time I observed the white male hand the defendant an amount of U.S. currency, at which time the defendant accepted that U.S. currency and placed it in his right pocket. The defendant then went into his left pocket and took out an object, *an object which I could not see but believed, based on what had transpired, to be a narcotics sale.*

*Id.,* at page 6 (emphasis added). After an objection, based upon defense counsel's contention that the conclusion as to a sale was purely speculative, and after argument and a ruling on that objection, Bier continued to testify as follows:

Q. After you made that observation and came to that conclusion, what action did you take?

A. I exited the vehicle and approached that property. As I was approaching the steps, both males looked in my direction and fled inside that property.

. . . .

Q. What did you mean by the word "fled"?

A. Ran.

*Id.,* at page 8.

Officer Bier never testified as to what Dennis may have done with the object which Bier could not see. From the record, we cannot conclude whether Dennis put the object back in his pocket, handed the object to another person, or threw it onto the ground. I fail to find sufficient articulable *facts* to support Officer Bier's *conclusion* that a narcotics sale had transpired.

A police officer may arrest without a warrant where there is probable cause to believe that a felony has been committed and that the arrestee is the felon. *Commonwealth v. Travaglia,* 502 Pa. 474, 484, 467 A.2d 288, 292

(1983), *cert. denied sub nom. Travaglia v. Pennsylvania,* 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850. Probable cause exists where *the facts and circumstances* within the knowledge of the officer are reasonably trustworthy and sufficient to warrant a person of reasonable caution in believing that the arrestee has committed the offense. *Id.*

The majority finds "particularly compelling ... the fact that residents of the area, individuals living on the 1600 block, made multiple reports to police of drug dealing at 1618 Sparks." Majority at 1019. I am at a complete loss to understand how these assertions became "facts" for purposes of our review. As discussed above, there is absolutely nothing in Officer Bier's direct testimony to support the majority's claim that the District complaints came from "residents of the area." The transcript is devoid of any testimony which would permit a reasonable conclusion that the complaints mentioned by the District Captain came from "individuals living on the 1600 block." Nor did Officer Bier testify concerning "multiple complaints."

I am unable to agree with my colleagues that Judge Bernstein, in granting the suppression motion, made two basic errors of approach. When I view the totality of the *facts* available to the suppression court, they still are nothing more than anonymous complaints passed through the Captain to the beat patrolmen, a possible exchange where the officer could not see what had been exchanged and did not testify that the unseen object had, in fact, been passed between the unidentified men, and the movement of the two, then-unidentified men into a house after looking in the direction of the officers. When these facts are taken together, they fall far short of permitting a reasonable belief that a felony had been committed. Judge Bernstein was well aware of the appropriate test and, in my view, properly and conscientiously applied it.

Judge Bernstein did not "discount" the facts, as suggested by the majority. He did set forth the law. The majority seemingly relies on cases involving the validity of search warrants in reversing the order of the suppression court,

e.g., *Commonwealth v. Kendrick*, 340 Pa.Super. 563, 490 A.2d 923 (1985); *Commonwealth v. Jones*, 506 Pa. 262, 484 A.2d 1383 (1984); *Commonwealth v. Price*, 318 Pa.Super. 240, 464 A.2d 1320 (1983). I have found the warrantless seizure cases cited and relied upon by the suppression court to be both appropriate and controlling. *Commonwealth v. Greber*, 478 Pa. 63, 385 A.2d 1313 (1978); *Commonwealth v. Lawson*, 454 Pa. 23, 309 A.2d 391, 394 (1973); *Commonwealth v. Vassiljev*, 218 Pa.Super. 215, 275 A.2d 852 (1971); *Commonwealth v. Hunt*, 280 Pa.Super. 205, 421 A.2d 684 (1980). *See and compare Commonwealth v. Martinez*, 403 Pa.Super. 125, 588 A.2d 513 (1991) *petition for allow. denied* 608 A.2d 29 (1992).

Unless Officer Bier had probable cause to believe that a drug sale had been consummated and that Gary Dennis had participated in that felony, Bier had no authority for chasing Dennis and the other unidentified male into the house. When I consider all of the factors which can be gleaned from Bier's testimony and their total effect, I am not convinced that it was reasonable to believe that a crime had been committed at the moment Bier exited his vehicle and approached the unidentified suspects.

Judge Bernstein reached the following conclusions:

Although Officer Bier stated that the defendant "ran", the testimony is clear that the defendant could only have traveled a few feet before he was into his house. No probable cause existed to justify Officer Bier's chasing the defendant through his house. At the time Officer Bier chased Gary Dennis into his house, he and another man were acting in a normal manner on a front porch. There was nothing so unusual about their persons or in their conduct to indicate that they were engaging in criminal activity.

Opinion, Bernstein, J., December 2, 1991, page 6. Judge Bernstein's factual findings are supported by the record. While this court may not be bound by the conclusions reached by the suppression court, I find them to be fully

440

supported by the facts of record and consistent with Pennsylvania law.

I would affirm the order of the trial court which granted the motion to suppress physical evidence. I must, therefore, dissent.