J-S59037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RAY PALESTINI | |
| | No. 297 EDA 2017 |

Appeal from the Order December 20, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001581-2016

BEFORE: BENDER, P.J.E., OTT, and FITZGERALD,* JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED DECEMBER 18, 2017**

The Commonwealth appeals from the order granting the motion of
Appellee, Ray Palestini, to suppress physical evidence arising from the search
of Appellee's residence on the basis of an anticipatory search warrant.  The
Commonwealth argues that probable cause existed to issue the warrant
because law enforcement personnel repeatedly observed Appellee's
accomplice purchase bags of pills from two pharmacies and transport them to
Appellee's residence.  We reverse and remand for further proceedings.

On September 15, 2015, police officers obtained an anticipatory search
warrant to search Appellee's residence for controlled substances, specifically,
methadone, oxycodone and xanax.  On September 17, 2015, the officers

---

* Former Justice specially assigned to the Superior Court.

executed the warrant at Appellee's residence and seized 599 methadone pills, 302 oxycodone pills, 70 lorazepam pills, and $17,000.00 in cash. Appellee was arrested and charged with possession with intent to deliver controlled substances[1] and other drug-related offenses. Appellee filed a motion to suppress asserting that the search warrant failed to provide probable cause to search his residence. Appellee also moved to suppress statements that he made to police officers following his arrest.

The affidavit of probable cause underlying the anticipatory search warrant provides:

### I. Affiant's Background

Your affiant is currently a Narcotics Agent with the Commonwealth of Pennsylvania, Office of Attorney General, Bureau of Narcotics Investigation and Drug Control, Philadelphia Office, Region II. Your Affiant has been employed by the Office of Attorney General since September 1990.

Your Affiant has prepared and/or assisted in the execution of over 400 search and/or arrest warrants as an undercover Criminal Investigator. During those assignments, your Affiant received extensive narcotics training. Your Affiant has attended numerous training sessions and seminars in the area of criminal investigations, including but not limited to, a one hundred and sixty (160) hour Advanced Criminal Investigations School, Pa State Police Academy. Your Affiant has attended the 45-hour "Top Gun" Narcotics Investigators School, and the BNIDC Agent's Academy.

Your Affiant is empowered by law to conduct investigations of, and make arrests for, offenses involving violations of the Controlled Substance, Drug Device and Cosmetic Act of April

---

[1] 75 P.S. § 780-113(a)(30).

14, 1972, and Corrupt Organization and Criminal Conspiracy under the Pennsylvania Crimes Code.

Your Affiant is an "investigative or law enforcement officer" within the meaning of Section 5702 of the Pennsylvania Wiretapping and Electronic Surveillance Control Act and, in such capacity, your Affiant has successfully completed the Pennsylvania State Police "A" certification course required to monitor and utilize electronic surveillance equipment. Your Affiant's certification number is A-1409.

Your Affiant's duties have included arrests, surveillance, undercover purchases of controlled substances, the interviewing and use of informants and the debriefing and interviewing of drug law violators. As a result of your Affiant's training and experience, your Affiant is familiar with the manner in which drugs are sold, priced, and the manner in which drugs are processed and packaged. Your Affiant is also familiar with drug trafficking patterns employed by persons involved in the distribution of illegal drugs.

## II. Probable Cause

On July 15, 2015 your Affiant Narcotics Agent Vincent Jackson received information from a confidential source [("C/S")] that the defendant Rosemary Divincenzo was picking up a large amount of controlled substance pills. The C/S specifically stated the defendant would be receiving a large shipment of methadone pills from a pharmacy in Delaware County Pa. The defendant was previously arrested for distributing methadone, oxycodone and Xanax pills in 2011 by Philadelphia Pennsylvania police department. Based on the defendant's prior arrest record, your Affiant decided to perform a physical surveillance on the defendant to determine if she was engaged in the illegal distribution of controlled substances.

On July 20, 2015 surveillance was established at the pharmacy the defendant used to fill her prescriptions for controlled substances, at approximately 2:30 p.m. the defendant was observed arriving at [redacted[2]] pharmacy.

---

[2] The redactions were in the copy of the affidavit of probable cause contained in the certified record. It is unclear when the redactions were made.

The pharmacy is located at [redacted], Pa. She was observed going inside. Your Affiant observed Rosemary Divincenzo accept a large white bag with pill bottles inside of it, while he was in the pharmacy with her.

Divincenzo was followed by Law Enforcement personnel as she exited the pharmacy at approximately 2:51 p.m. She proceeded to get onto I95 North towards Philadelphia. Divincenzo was eventually followed to 2502 S. 10th Street, where she was observed entering the property. Divincenzo had the white bag containing pill bottles in her hand; this was at approximately 3:23 p.m.

Rosemary Divincenzo exited 2502 S. 10th Street at approximately 3:43 p.m. She did not have the white bag in her hand. She got into her vehicle and left the area. A few minutes later a white male identified as Raymond Palestini was observed by members of the DEA Philadelphia Tactical Diversion Squad exit 2502 S. 10th Street. He proceeded to engage in what appeared to be drug transactions with several individuals.

On August 18, 2015 your Affiant received information once again from the same confidential source that Rosemary Divincenzo was receiving a large amount of schedule II Controlled Substance pills, specifically methadone, oxycodone and xanax. She was going to the same pharmacy as before, [redacted] pharmacy. Your Affiant observed Divincenzo go inside of the pharmacy at 2:05 p.m., [and] she was observed by your Affiant leaving the pharmacy at 2:20 p.m., with a large white bag containing pill bottles. Rosemary Divincenzo made one stop at a Dunkin Doughnut shop, two doors away from the pharmacy. She met with no one and left a few minutes later. She was observed by your affiant the whole time. She then drove to I95 North, towards Philadelphia. Divincenzo was followed by your Affiant to 2502 S. 10th Street, once again. She was observed by Group Supervisor Minh Nguyen of DEA Philadelphia as she entered the property with the white pill bag at approximately 2:43 p.m. Prior to Divincenzo arriving Raymond Palestini was observed engaging in what appeared to be several drug transactions. At approximately 3:08 p.m., Divincenzo was observed leaving the property without

the white bag with the pills inside. Surveillance was terminated at 4:00 p.m.

On September 15, 2015 your Affiant received information from the same confidential source as previously, that Rosemary Divincenzo was once again picking up 1200 methadone pills from [redacted] pharmacy located at 1154 Baltimore Ave, Springfield Pennsylvania at approximately 1:00 p.m.

On September 15, 2015 it is anticipated that Rosemary Divincenzo is going to deliver the 1200 methadone pills to Raymond Palestini at 2502 S. 10th Street, as she has previously done on July 20, 2015 and August 18, 2015. Based on your Affiant's training and experience, he believes the subject Rosemary Divincenzo and Raymond Palestini are conspirators in the illegal distribution of narcotics. Your Affiant expects to find supporting information and evidence of illegal drug distribution at 2502 S. 10th Street, Philadelphia Pennsylvania.

Based on the foregoing, your Affiant has probable cause to believe Rosemary Divincenzo will deliver approximately 1200 methadone pills to 2502 S. 10th Street, Philadelphia Pennsylvania on September 15, 2015. Your Affiant is submitting an application for an Anticipatory Search and Seizure Warrant for 2502 S. 10th Street Philadelphia Pa. If approved this Warrant shall be Valid and Lawful for the residence listed above. The execution of this warrant shall be contingent upon Rosemary Divincenzo obtaining prescription drugs then immediately driving to and entering 2502 S. 10th Street with a large white bag with pills inside and exiting without the bag.

## III. Conclusion

Based on the above facts and circumstances, your affiant believe probable cause exists to believe that the residence of 2502 S. 10th Street, Philadelphia, PA is used to sell illegal narcotics. Your Affiant also knows through his education, knowledge and experience that individuals involved in the trafficking of controlled substances likely are in possession of weapons, drug paraphernalia used for the packing and transport of controlled substances, records and sums of U.S.

> currency. Your Affiant further knows that individuals involved in the trafficking of controlled substances secrete or hide controlled substances and these other items within a secure place, such as a vehicle or home to deter detection by law enforcement and/or other individuals
>
> In the event that Rosemary Divincenzo does not deliver the pills to 2502 S. 10th Street, this warrant will become null and void and will not be served.
>
> Affiant submits this Application for authorization of an Anticipatory Search and Seizure Warrant by this Honorable Court, for 2502 S. 10th, Philadelphia County, PA.

R.R. 13a-18a.[3]

On November 28, 2016, the trial court granted Appellee's motion to suppress all evidence arising from the search of his residence without ruling on Appellee's motion to suppress his post-arrest statements. The Commonwealth filed a motion for reconsideration. On December 8, 2016, the trial court granted the motion, vacated the suppression order and scheduled the matter for a hearing. On December 20, 2016, following the hearing, the trial court reinstated its order granting Appellee's motion to suppress all physical evidence.

The Commonwealth filed a timely appeal under Pa.R.A.P. 311(d) certifying that the suppression order terminated or substantially handicapped its prosecution. Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

---

[3] For the parties' convenience, we cite to the Commonwealth's reproduced record whenever possible.

The Commonwealth raises a single issue in this appeal:

Did the [trial] court err by suppressing almost one thousand narcotics pills and seventeen thousand dollars in cash seized pursuant to a search warrant where an experienced investigator repeatedly observed a suspect receive bags of pill bottles which were transported to a drug sales location?

Commonwealth's Brief at 3.

The Commonwealth claims that the trial court erred in failing to afford adequate deference to the magistrate's determination that probable cause existed. *Id.* at 8-9. According to the Commonwealth, the affiant, an experienced officer in drug trafficking, received information from a C/S that that Divincenzo was picking up large quantities of controlled substances from a pharmacy on two occasions. *Id.* The affiant then corroborated the C/S's information by observing Divincenzo picking up large bags of pills from the pharmacies. *Id.* Further, investigators followed Divincenzo to the residence to be searched, and on both occasions, Divincenzo entered the residence with a white pharmacy bag and left the residence without the bag. *Id.* Appellee was seen exiting the residence and conducting what appeared to be narcotics transactions. *Id.* The Commonwealth thus asserts that the trial court's focus on the reliability of the C/S was misplaced, because the affiant corroborated the C/S's report, and the affiant's own observations provided a substantial basis for finding probable cause. *Id.* at 12-13. Additionally, the Commonwealth claims that the trial court erred in suggesting that Appellee's oral statements should also be suppressed because that issue was not

encompassed in its order suppressing the physical evidence. *Id.* at 13. Although the affidavit of probable cause fails to establish the C/S's reliability, we conclude that there was sufficient independent corroboration of the C/S's tips by the investigating officers to justify the issuance of the warrant.

Our standard of review is well settled.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Korn***, 139 A.3d 249, 252–53 (Pa. Super. 2016) (citations and quotation marks omitted).

In ***Illinois v. Gates***, 462 U.S. 213 (1983), the United States Supreme Court adopted a "totality-of-the-circumstances" standard for evaluating search warrants, which "permits a balanced assessment of the relative weights of all the various indicia of reliability and unreliability attending an informant's tip." ***Commonwealth v. Clark***, 28 A.3d 1284, 1288 (Pa. 2011) (discussing ***Gates***). Our Supreme Court adopted ***Gates*** as the applicable law under the Pennsylvania Constitution in ***Commonwealth v. Gray***, 503 A.2d 921 (Pa. 1985). Under the totality-of-the-circumstances test, facts

insufficient to support probable cause if considered separately may add up to probable cause in combination, *see Commonwealth v. Dennis*, 612 A.2d 1014, 1016-17 (Pa. Super. 1992) (citations omitted), particularly when "viewed through the eyes of a prudent, reasonable, cautious police officer guided by experience and training." *Commonwealth v. Wells*, 916 A.2d 1192, 1195 (Pa. Super. 2007) (citations omitted).

The standard for assessing search warrants that rest upon information received from a confidential informant

> depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner. *Commonwealth v. Luv*, [] 735 A.2d 87, 90 ([Pa.] 1999). Thus, an informant's tip may constitute probable cause where police independently corroborate the tip, **or** where the informant has provided accurate information of criminal activity in the past, **or** where the informant himself participated in the criminal activity. *Id.* The corroboration by police of significant details disclosed by the informant in the affidavit of probable cause meets the *Gates* threshold. *Commonwealth v. Sanchez*, 907 A.2d 477, 488 ([Pa.] 2006) (*quoting United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000)) ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause where there is some independent corroboration by police of the informant's information.").

*Clark*, 28 A.3d at 1288.

An anticipatory warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *United States v. Grubbs*, 547 U.S. 90, 94 (2006) (citation omitted). "Most anticipatory warrants subject

their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition.'" ***Id.***

> When considering whether an anticipatory search warrant was supported by probable cause under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, judicial review is confined to the averments contained within the four corners of the affidavit of probable cause. Further, "[w]hether a particular anticipatory warrant should or should not be approved . . . will depend upon the sufficiency of the averments in the individual case."
>
> In judging whether particular averments establish probable cause, we are mindful of the principle that:
>
>> Probable cause . . . is a practical, non-technical conception requiring a consideration of the totality of the circumstances . . . The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

***Commonwealth v. Wallace***, 42 A.3d 1040, 1048 (Pa. 2012) (citations and footnotes omitted). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis . . . for conclud[ing] that probable cause existed." ***Commonwealth v. Coleman***, 830 A.2d 554, 560 (Pa. 2003) (citation and quotation marks omitted).

In this case, although the affidavit did not establish that the C/S was reliable, it still managed to furnish probable cause because the investigating officers sufficiently corroborated the C/S's tips. Thus, the issuing authority

had probable cause to issue the anticipatory warrant to search for controlled substances in Appellee's residence.

We first review the information that the C/S provided to the police. The affidavit states that on three separate dates, the C/S advised that Divincenzo would be receiving substantial shipments of controlled substances at the pharmacies. R.R. 14a-16a. On July 15, 2015, the affidavit states, the C/S advised that Divincenzo was picking up a "large shipment" of methadone pills from a pharmacy in Delaware County. R.R. 14a. The affidavit does not state how or when the C/S learned this information. Neither does the affidavit state that the C/S identified the pharmacy or when Divincenzo would pick up the shipment. Similarly, the affidavit states that on August 18, 2015, the C/S advised that Divincenzo "going to the same pharmacy as before" to receive a "large amount" of "methadone, oxycodone and Xanax." *Id.* at 15a. Once again, the affiant fails to describe how or when the C/S learned this information. Neither does the affidavit state that the C/S identified when Divincenzo would receive the shipment. Finally, the affidavit states that on September 15, 2015, the C/S advised that Divincenzo was picking up 1200 methadone pills at 1:00 p.m. from a pharmacy at 1154 Baltimore Avenue in Springfield, Pennsylvania. *Id.* at 16a. Yet again, the affiant fails to describe how or when the C/S learned this information. The affidavit does not indicate that the C/S provided information in the past which resulted in arrests or convictions.

Had this been the only information in the affidavit, it would have been proper for the trial court to grant Appellee's motion to suppress. Here, however, the warrant includes additional information that police officers obtained through their own independent investigation. The affidavit states that on July 18, 2015, the affiant watched Divincenzo "at the pharmacy [she] used to fill her prescriptions for controlled substances . . . Your affiant observed [her] accept a large white bag with pill bottles inside of it, while he was in the pharmacy with her." *Id.* at 15a. Law enforcement personnel followed her to Appellee's residence in Philadelphia, where she entered with the bag at 3:23 p.m. and left at 3:43 without the bag. *Id.* Appellee then left the residence and "engage[d] in what appeared to be drug transactions with several individuals." R.R. at 15a. Similarly, the affidavit states that on August 18, 2015, the affiant "observed [Divincenzo] go inside the pharmacy at 2:05 p.m. [and leave] at 2:20 p.m., with a large white bag containing pill bottles." *Id.* at 15a-16a. The affiant followed her to Appellee's residence, where another law enforcement officer observed her enter the residence with the bag at 2:43 p.m. and leave at 3:08 p.m. without the bag. *Id.* at 16a. Finally, as noted above, the affidavit states that on September 15, 2015, the C/S informed the affiant that Divincenzo was picking up 1200 methadone pills at approximately 1:00 p.m. from a pharmacy in Springfield. *Id.*

The trial court concluded that this information was insufficient:

> [The affiant] doesn't mention where he got those tidbits of information, how he or the source knew she was going to

be picking up "approximately 1200 methadone pills," or in any other way explain how he arrived at the conclusion that it was "her" pharmacy and was where she got "her" prescriptions filled, whether from the source or anyone else, even having noted himself that on the anticipated third occasion she was going to go to a different pharmacy. If the mere facts that a person went to a pharmacy and picked up drugs were the only bases needed to support the astronomical leap to the conclusion that criminal activity was afoot[,] the police would be entitled to search every residence in the country at any time they felt like it if a resident of, or visitor to it, was seen buying something at a pharmacy and bringing it to his or anyone else's home. That the observed activities were illegal are sheer conclusions based upon the observation of what by the agent's own description only appeared to be completely normal and legal activities: an individual going to a drug store and getting monthly prescription refills.

Trial Ct. Op., 3/13/17, at 11.

We disagree with this analysis. On one date in July 2015 and another in August 2015, the C/S informed the police that DiVincenzo was purchasing a large amount of controlled substance pills at a Delaware County pharmacy. The police corroborated both tips. On both dates, they observed DiVincenzo purchasing large bags of prescription drugs at Delaware County pharmacies, driving to Appellee's residence, entering the residence and leaving without the bags less than one half hour later. On the first date, the police observed Appellee engage in what appeared to be hand-to-hand drug sales after DiVincenzo's departure. On the second date, the police observed Appellee engage in what appeared to be drug sales prior to DiVincenzo's arrival. On September 15, 2015, one month later, the C/S told the affiant that DiVincenzo would deliver 1200 methadone pills to Appellee's residence. Collectively, this

information furnished probable cause to anticipate that DiVincenzo and Appellee were conspiring to sell narcotics illegally, and that DiVincenzo would purchase a significant number of methadone pills and deliver them to Appellee's residence that day for illegal distribution.[4]

Order reversed. Case remanded for proceedings in accordance with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2017

---

[4] As a further precaution, the affidavit stated that the police would not execute the warrant unless DiVincenzo obtained prescription drugs that day, drove immediately to Appellee's residence, entered the residence with a bag and left without the bag. Appellee does not dispute that these events actually took place.