J-S12013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIK LOPEZ-TORRALBA | : | |
| | : | |
| Appellant | : | No. 1378 EDA 2020 |

Appeal from the PCRA Order Entered June 9, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003427-2015

BEFORE: LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.: **FILED MARCH 24, 2022**

Erik Lopez-Torralba appeals from the order, entered in the Court of Common Pleas of Montgomery County, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546. Upon careful review, we affirm.

On March 30, 2016, Lopez-Torralba was convicted by a jury of numerous drug-related offenses and was sentenced, on August 4, 2016, to nine to eighteen years' imprisonment. The subsequent—and extensive—procedural history has been recited in this Court's memorandum filed October 5, 2021, in which we remanded the case to the PCRA court for a determination as to the timeliness of Lopez-Torralba's notice of appeal and the preparation of an opinion. *See Commonwealth v. Lopez-Torralba*, 1378 EDA 2020 (Pa. Super. filed Oct. 5, 2021) (unpublished memorandum decision). The PCRA

court having complied with the directives of that memorandum, the matter now returns to us for disposition.[1]

Lopez-Torralba raises the following claims for our review:

1. Did the PCRA court err in failing to grant a new trial based on trial counsel's ineffective assistance in failing to raise and/or argue at a suppression hearing that the evidence seized during a search of [Lopez-Torralba's] home[ and] cell phone, and statements made [were] obtained by exploitation of an illegal arrest in violation of Article I, section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution?

2. Did the [PCRA] court err in failing to grant a new trial based on trial counsel's ineffective assistance in failing to request the prosecution to disclose the identity of the confidential informant and audio recordings of the one-on-one controlled drug buy between the informant and the Commonwealth's key witness, Gladiz Basurto-Leal?

3. Did the PCRA court deny due process and a fundamentally fair evidentiary hearing in denying [Lopez-Torralba's] discovery request to compel the Commonwealth to turn[ ]over crucial evidence relevant to carry his burden of proof to establish trial counsel's ineffectiveness?

Brief of Appellant, at 4.

We begin by noting our standard and scope of review:

This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions.

_____

[1] Both Lopez-Torralba and the Commonwealth have filed supplemental briefs responding to the PCRA court's opinion.

> Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

***Commonwealth v. Dozier***, 208 A.3d 1101, 1103 (Pa. Super. 2019).

Lopez-Torralba's first two claims allege the ineffectiveness of his trial counsel. Counsel is presumed to be effective, and "the burden of demonstrating ineffectiveness rests on [the] appellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that[:] (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

***Commonwealth v. Holt***, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted).

"When, as in this case, an assertion of ineffective assistance of counsel is based upon the failure to pursue a suppression motion, proof of the merit of the underlying suppression claim is necessary to establish the merit of the ineffective assistance of counsel claim." ***Commonwealth v. Carelli***, 546 A.2d 1185, 1189 (Pa. Super. 1988) (citations omitted).

Lopez-Torralba first asserts that trial counsel was ineffective for failing to seek suppression on the basis that the police lacked probable cause when they handcuffed him, placed him in the back of a police cruiser, and

transported him to the Norristown Police Station. Lopez-Torralba argues that a challenge to the custodial detention on the basis of Article I, section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution—rather than the argument actually pursued by counsel in his suppression motion[2]—would have resulted in the suppression of the evidence obtained as a result of the illegal custodial detention. Lopez-Torralba asserts that,

> [g]iven the undisputed facts of this case, no competent lawyer would fail to argue that, under the fruit of the poisonous tree doctrine, all evidence seized and a statement made by [Lopez-Torralba] must be suppressed because it was obtained as a result of exploitation by the police of an unlawful custodial detention.

Brief of Appellant, at 19.

Because the police possessed probable cause to believe that Lopez-Torralba was engaged in the unlawful sale and distribution of illegal narcotics when they took him into custody, he is entitled to no relief.

> Probable cause is made out when the facts and circumstances [that] are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

---

[2] In Lopez-Torralba's supplemental suppression motion, and at the suppression hearing, counsel argued that the consent given by Lopez-Torralba to search his automobile, residence, and iPhones was not knowing, intelligent, and voluntary.

- 4 -

*Commonwealth v. Brogdon*, 220 A.3d 592, 599 (Pa. Super. 2019).

"Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most reasonable inference." *Id.*, quoting *Commonwealth v. Spieler*, 887 A.2d 1271, 1275 (Pa. Super. 2005).

Here, Detective Wood possessed probable cause to detain Lopez-Torralba. At trial, several members of the Narcotics Enforcement Team of the Montgomery County District Attorney's Office, which was engaged in an ongoing investigation into a heroin trafficking ring in Norristown, Montgomery County, testified on behalf of the Commonwealth. Detective Michael Reynolds testified that he met with a reliable confidential informant ("CI"), who placed a call to a Mexican phone number on April 13, 2015. *See* N.T. Trial, 3/28/16, at 41. As a result of that call, the CI placed another call on April 14, 2015, to a local number belonging to someone the CI knew as "Gladiz," and arranged a meeting, to take place at a Chili's restaurant in King of Prussia, to purchase one kilogram of heroin. *Id.* at 42. Using the phone number called by the CI, Det. Reynolds determined that "Gladiz" was Gladiz Basurto-Leal, who resided at 831 George Street in Norristown. *Id.* at 43.

Lieutenant Stephen Forzato testified that, on April 14, 2015, he conducted surveillance outside 831 George Street. He observed a blue Chevrolet pull up outside the residence. *Id.* at 47. An Hispanic female—subsequently identified as Basurto-Leal—exited the driver's side of the car and

an Hispanic male—subsequently identified as Lopez-Torralba—emerged from the passenger seat. *Id.* at 47, 50. Both individuals entered the residence, and both exited five minutes later. *Id.* at 47, 50. When Lopez-Torralba exited the residence, he was carrying a plastic bag containing what Lt. Forzato believed, based upon his training and experience, to be a "brick" of heroin. *Id.* at 52. Lieutenant Forzato radioed to his fellow officers that an Hispanic male wearing red pants appeared to "ha[ve] what you're looking for," e.g., a brick of heroin. *Id.*

Basurto-Leal and Lopez-Torralba entered the vehicle, with Basurto-Leal in the driver's seat. *Id.* at 53. Lieutenant Forzato followed them in the direction of King of Prussia for a period of time. *Id.* Lieutenant Forzato lost sight of the vehicle for a while; when he regained sight of the car, he observed that Lopez-Torralba was no longer in the passenger seat. *Id.* at 54. Lieutenant Forzato followed as Basurto-Leal drove the car to Chili's in King of Prussia, at the intersection of Gulph Road and Route 202. *Id.* at 56. Basurto-Leal sat in the parking lot for approximately five minutes and then left. *Id.* At that point, Lt. Forzato testified that he radioed Upper Merion Police and requested that they stop Basurto-Leal's vehicle. *Id.* at 57. Basurto-Leal was stopped on Route 202, near the Valley Forge Shopping Center, and taken into custody. *Id.*

Detective James Vinter testified that, on April 14, 2015, at approximately 12:25 p.m., he was conducting surveillance from a vehicle

parked across from 831 George Street. *Id.* at 65. He observed a silver Acura circle the block several times, finally stopping in front of 831 George Street. *Id.* at 67-68. Lopez-Torralba exited the vehicle and entered the residence. *Id.* at 68. Detective Vinter recognized him from the previously-radioed description of a male wearing a white shirt and red sweat pants. *Id.* at 70. Lopez-Torralba re-emerged from the George Street residence with another male and drove off in the Acura, at which time Det. Vinter notified other surveillance officers that Lopez-Torralba had left the George Street residence. *Id.* at 69. Thereafter, at approximately 1:00 p.m., Lopez-Torralba was observed by Detective Michael Fedak making a stop at 541 Arch Street, Norristown. *Id.* at 74-75. Detective Wood subsequently encountered Lopez-Torralba's vehicle on Arch Street and requested that uniformed officers stop him. *See* N.T. Trial, 3/29/16, at 8. Ultimately, Lopez-Torralba pulled into a parking lot and exited his vehicle, at which point Det. Wood approached the vehicle and informed Lopez-Torralba that he was being stopped in connection with a drug investigation. *Id.* at 10. Lopez-Torralba denied involvement with drugs and, at Det. Wood's request, agreed to allow police to search his car. *Id.* Detective Wood "did not want the whole neighborhood to know what [they] were doing," so he drove Lopez-Torralba's vehicle to the Norristown police station to be searched. *Id.* Lopez-Torralba was transported to the station in the back of a marked police car. *Id.* at 11.

Based upon the totality of the circumstances described in the testimony of the members of the Montgomery County Narcotics Enforcement Team, at the time he stopped Lopez-Torralba in the Arch Street parking lot, Det. Wood possessed probable cause to suspect that: (1) illegal narcotics trafficking was occurring and (2) Lopez-Torralba was involved. *See Commonwealth v. Dennis*, 612 A.2d 1014, 1015-16 (Pa. Super. 1992) ("Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that [the] defendant has committed it."). A reliable CI contacted a connection in Mexico, which led the CI to contact Basurto-Leal to arrange for the purchase of a large quantity of heroin. Lopez-Torralba was subsequently seen in the company of Basurto-Leal, driving in a car and entering and exiting her home, both in her company and alone. Basurto-Leal was observed parked at Chili's, where the CI had arranged to meet her to purchase the heroin. Finally, Lopez-Torralba was seen exiting Basurto-Leal's home with, what appeared to a trained narcotics officer, to be a brick of heroin.

Because probable cause existed to detain Lopez-Torralba, a suppression motion challenging the existence of probable cause would not have been successful. "As the underlying claim lacks arguable merit, counsel cannot be deemed ineffective for failing to raise it." *Commonwealth v. Koehler*, 36 A.3d 121, 140 (Pa. 2012).

Lopez-Torralba next asserts that trial counsel was ineffective for failing to seek disclosure of the identity of the CI, in addition to audio recordings of the phone conversations between the CI and the Mexican connection, and between the CI and Basurto-Leal. Lopez-Torralba argues that evidence of the recording of the CI's conversations would have undermined Leal's credibility as a witness against him:

> Given the nature of [Lopez-Torralba's] defense, the significance of undermining Basurto-Leal's credibility cannot be underestimated. These recordings in the hands of com[p]etent counsel had the potential to strike a serious blow to Basurto-Leal's credibility. The audio[-]taped recordings would have permitted the jury to hear in Basurto-Leal's own words admitting to the "CI" that she represented a Mexican drug cartel in the Norristown area and could supply the "CI" with large amounts of heroin and, in her own words, how experienced and savvy a drug negotiator she was. Basurto-Leal is an admitted liar, she either lied when she initially told police [Lopez-Torralba] was not involved in her drug dealing[,] or she lied, after being given a favorable deal, when she said in court [Lopez-Torralba] was the architect behind her drug dealing.

Brief of Appellant, at 31.

Because trial counsel had a reasonable strategic basis for not seeking disclosure of the CI's identity, and because Lopez-Torralba failed to prove either the existence or contents of the audio recordings, or that they would be exculpatory if they existed, he is entitled to no relief.

Generally, counsel's assistance is considered effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010). Where matters of strategy and tactics are concerned, "[a] finding

that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Colavita*, 993 A.2d 874, 887 (Pa. 2010) (quotation marks omitted). Further, to demonstrate prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012). "[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceedings." *Ali*, 10 A.3d at 291.

We begin by noting that, contrary to Lopez-Torralba's assertion, Basurto-Leal did not testify at trial that Lopez-Torralba was "the architect behind her drug dealing." Brief of Appellant, at 31. Rather, Basurto-Leal admitted her culpability and consistently testified that she and Lopez-Torralba "did it together." N.T. Trial, 3/29/16, at 70. *See also id.* at 56 (Basurto-Leal stating "[w]e both did it"). Accordingly, Lopez-Torralba cannot demonstrate that the purported audio recordings—allegedly revealing Basurto-Leal to be an "experienced and savvy drug negotiator"—would have undermined her testimony such that a different verdict would have resulted. *Holt*, *supra*.

Moreover, trial counsel articulated a reasonable strategic basis for not delving into the CI's identity. At the PCRA hearing, trial counsel, Sean E. Cullen, Esquire, testified as follows:

- 10 -

Q:  Are you familiar with the fact that there was mention of a [CI] in the discovery in this case?

A:  Yes.

Q:  Did you have any discussions with Mr. Lopez[-Torralba] as to strategy on trying to force the Commonwealth to disclose that [CI] by way of a motion?

A:  I did.

Q:  Where did you have those discussions with him?

A:  They would have been face to face.

Q:   And what was the—what was your strategy as to why you didn't file any motions to divulge the [CI]?

A:  So[,] beyond the scope of Mr. Lopez-[Torralba]'s case, I also had pretty intimate information concerning the David Pacheco case.

I had represented David Pacheco ten or 12 years ago in which we were virtually able to exonerate him as a tow truck driver that was moving huge amounts of narcotics for his family's organized crime unit.  Basically[,] I made him an unwitting [accomplice] for purposes of the Commonwealth's case.

Mr. Pacheco had gotten in trouble again and it was, I believe, part of this criminal organization.[3]  It was a big case.  I happened to be in District Attorney Steele's office when the case broke[.]  So[,] I realized immediately by putting the two and two of those together that Mr. [Lopez-Torralba] was involved, whether knowingly or not knowingly, in a much larger situation.  They were

_____

[3] In 2015, the Montgomery County District Attorney's Office, Narcotics Enforcement Team, working with the DEA, uncovered a large criminal conspiracy as part of a heroin-trafficking investigation. *See Commonwealth v. Pacheco*, 227 A.3d 358, 362 (Pa. Super. 2020). They believed that Pacheco, a Norristown resident, played a significant role in this operation by transporting drugs from Georgia to New York. *See id.*  In January 2016, Pacheco was arrested by police as he drove from Atlanta to Montgomery County with a "retrofitted car battery containing three kilograms of heroin." *Id.* at 363.  Pacheco was subsequently convicted of numerous drug-related offenses.

basically hiding large amounts of narcotics in batteries that were made in Mexico.

So[,] I spoke to [Lopez-Torralba], indicated that I believe there w[ere] some problems with the Pacheco case, but I did not choose to represent Mr. Pacheco in the second case. So[,] I had some worries that [Lopez-Torralba] was involved in a much larger ring and that he would be brought into that much larger case.

I also had secondary worries that [the Pacheco] case probably should have been tried federally and there was the potential to go federal [in this case]. So[,] we had those discussions.

In addition, based on the information I had[,] and the communications that I had with [the Assistant District Attorney in this case], I did not believe that the [CI] would be pertinent to this case in that there were communications between [the CI] and the female in this case[, Ms. Basurto-Leal].

It was a situation by which, if I forced [the ADA's] hand and brought the [CI] forward and then she was forced to use him, we strategized that I would be providing much more liability on this case.

The entire defense on this case was that [Lopez-Torralba] was an unwitting [accomplice], and that it was an oath-on-oath case with some minor inconsistencies in the story line. Any additional evidence that I produced that would either give the female in this case[, Ms. Basurto-Leal,] more credibility or produce a single piece of evidence that brought our client into the case, I believe would be fatal to his defense.

Q: Did you have specific—did Mr. Lopez[-Torralba] ever direct you, regardless of your strategic decision or legal opinion, to file a motion anyway?

A: No.

Q Did he ever tell you he was dissatisfied with the fact that you weren't pursuing the [CI]?

A: No.

. . .

Q: And in terms of the [CI], do you remember what role the [CI] played in this case?

A: I remember that there was a phone call. Beyond that, again, I didn't have my file to review for today, so no, I don't remember anything beyond that.

Q: And do you have a specific recollection about discussing those issues with [Lopez-Torralba]?

A: Yes. There's the broad—there's broad issues that we discuss with every client which this would be included in that and there's the specifics of every case. So[,] this would have been included in both the broad and then the more specific decision that we made to pursue or not to pursue.

Q: And did he at any time express to you dissatisfaction with the litigation choices you made?

A: No. [Lopez-Torralba] is—he's very, very bright. He's a smart individual. And I felt that when I was strategizing with him, I was strategizing with someone who knew what was going on. But he did not show any dissatisfaction.

There was no time in which I can remember during the course of our professional relationship that he showed any dissatisfaction with me. Even through verdict, [there] did not appear to be any hard feelings, just [“]what are we going to do next[?”]

N.T. PCRA Hearing, 3/3/20, at 12-15, 19-20.

The PCRA court credited counsel's testimony that involving the CI could potentially have led to the disclosure of Lopez-Torralba's involvement in a larger drug operation and, possibly, federal charges. Counsel articulated a reasonable strategic basis for his decision and, accordingly, the PCRA court properly denied relief. *Ali*, *supra*.

Finally, Lopez-Torralba claims that the PCRA court erred in refusing to grant his request for discovery of audio recordings of the CI's telephone

conversations with the Mexican connection and Basurto-Leal, as well as the identity of the CI.[4] He is entitled to no relief.

The Pennsylvania Rules of Criminal Procedure provide, in relevant part, that "no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). The PCRA and the applicable rules do not define "exceptional circumstances" that would support discovery on collateral review. **Commonwealth v. Frey**, 41 A.3d 605, 611 (Pa. Super. 2012). "Rather, it is for the trial court, in its discretion, to determine whether a case is exceptional and discovery warranted." **Id.**, citing **Commonwealth v. Dickerson**, 900 A.2d 407, 412 (Pa. Super. 2006). "Mere speculation" that exculpatory evidence may exist does not establish that exceptional circumstances exist. **Dickerson**, 900 A.2d at 412; **see also Commonwealth v. Hanible**, 30 A.3d 426, 452 (Pa. 2011) (holding that showing of good cause under Rule 902(E)(2) "requires more than just a generic demand for potentially exculpatory evidence").

> We will not disturb a court's determination regarding the existence of exceptional circumstances unless the court abused its discretion. An abuse of discretion is not a mere error in judgment. Instead, it is a decision based on bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. Moreover, we [note] that the appellant has the duty to convince us an abuse occurred.

---

[4] Lopez-Torralba's brief contains no argument as to his claim regarding disclosure of the identity of the CI. Accordingly, he has waived this claim on appeal for lack of development.

*Frey*, 41 A.3d at 611 (internal citations omitted).

Here, Lopez-Torralba has demonstrated neither that exceptional circumstances exist, nor that the PCRA court's decision was the result of "bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." *See id.* Rather, he merely speculates that

> the . . . discovery material was central to [his] PCRA theory that the one-on-one audio[-]recorded drug buy contained core impeachment material that would have permitted the jury to hear in Basurto-Leal's own words that, contrary to her testimony, she was an experienced and savvy drug negotiator.

Brief of Appellant, at 34.

Lopez-Torralba has presented no proof that the audio recordings he seeks exist, or that they contain evidence that would exculpate him. "We will not sanction a fishing expedition when [an a]ppellant fails to provide even a minimal basis for his claim." *Commonwealth v. Lark*, 746 A.2d 585, 591 (Pa. 2000), overruled on other grounds by *Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020). "Mere speculation" is insufficient to demonstrate exceptional circumstances as required by Rule 902(E)(1). *See Dickerson*, *supra*.

Moreover, as noted above, contrary to Lopez-Torralba's assertion, Basurto-Leal did not testify that she was not an experienced and savvy drug negotiator. Rather, she admitted her role in the offenses and acknowledged that she and Lopez-Torralba "did it together." N.T. Trial, 3/29/16, at 70. Accordingly, even if the audio recordings existed, and contained the statements Lopez-Torralba claims, the evidence would not be exculpatory as

to Lopez-Torralba, nor would they provide impeachment material as to Basurto-Leal.

In sum, we agree with the PCRA court that Lopez-Torralba failed to demonstrate exceptional circumstances warranting the grant of discovery under Rule 902(E)(1). Accordingly, the court properly denied this claim.

Order affirmed.

Judge Musmanno did not participate in the consideration or decision of this case.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 3/24/2022*